**IN THE COURT OF APPEALS OF IOWA**

No. 24-1720
Filed January 9, 2025

**IN THE INTEREST OF D.W.,**
**Minor Child,**

**A.J., Mother,**
       Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly K. Shepherd, Judge.

A mother appeals the termination of her parental rights to her son. **AFFIRMED.**

Gina L. Kramer of Kramer Law Office, PLLC, Dubuque, for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Barbara E. Maness, Davenport, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

A mother struggling with methamphetamine use appeals the termination of her parental rights to her son, born in 2015, under Iowa Code section 232.116(1)(d), (e), and (f) (2024). She claims that termination is not in the best interest of the child and that her bond with the child warrants a permissive exception. Even though the record shows the mother shared a "very strong and loving bond" with her son, she continued to use methamphetamine after close to two years of services. We accordingly affirm the termination of the mother's parental rights on our de novo review of the record.[1]

**I.      Background Facts and Proceedings**

D.W. is nine years old. In November 2022, the Department of Health and Human Services investigated a report that the mother and her boyfriend were using methamphetamine while caring for the child. The mother tested positive for methamphetamine the next month and agreed to a safety plan placing the child with a maternal aunt. The State petitioned to have the child adjudicated in need of the court's assistance in December. Following a pair of clean drug tests from the mother, D.W. went back to live with her under an amended safety plan in January 2023. The juvenile court granted the State's child-in-need-of-assistance petition the next month and placed D.W. in the mother's custody under the department's supervision. But that reunification was short-lived.

---

[1] This court reviews the termination of parental rights de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). While the juvenile court's factual findings are not binding, they are entitled to weight, especially when they involve credibility determinations. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

In May, the mother tested positive for methamphetamine again. She denied using that drug, although her boyfriend admitted that they tried to tamper with her sweat patch. This time, the child was placed with fictive kin under a new safety plan, but when the mother interfered with that placement, the State asked the court to remove the child from her custody. The court granted the State's request, and the child returned to the maternal aunt's home. After that placement fell through, the child was placed with a foster family, where he has since remained.

Between May 2023 and September 2024, the mother provided fourteen sweat patches and one hair sample for testing at the Department's request. Each was positive for methamphetamine.[2] The mother completed multiple substance use evaluations and attended an inpatient treatment program between December 2023 and February 2024. But she continued to test positive for methamphetamine during that treatment program and after her discharge. Apart from a private urine screen obtained by the mother in August 2024, her last negative test result for the department was in February 2023.

The mother denied using methamphetamine. She once told her case manager that a positive test was due to unintentionally consuming meth-laced marijuana. She said that other test results were caused by her close contact with known methamphetamine users. The mother had no explanation for the rest, insisting: "I'm not using, and I'm not doing it." She maintained the only thing she ever did to cause the child's removal was to "allow people to be around me who

---

[2] Many of these tests were also positive for THC, but because the mother had a medical marijuana card, the department was more concerned with her methamphetamine use.

used." Because of the mother's failure to address her substance-use issues, the department recommended terminating her parental rights.

The State sought termination, and a hearing was held in September 2024. Using the familiar three-step framework for termination of parental rights, *see In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010), the juvenile court found grounds to terminate the mother's parental rights under Iowa Code section 232.116(1)(d), (e), and (f) (2024).[3] It further concluded that termination was in the child's best interests and that the bond between the mother and her son did not support a permissive exception under section 232.116(3)(c).

The mother appeals, challenging these last two steps in the termination framework. Confining our review to those steps, we reject the mother's arguments on appeal. *See id.* at 40 (stating we need not address steps the parents do not challenge on appeal).

**II. Analysis**

Starting with the best-interests question, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (stating a child's safety and need for a permanent home are "the defining elements in a child's best interests"). "This consideration may include whether the parent's ability to provide the needs of the child is affected by the parent's mental capacity or mental condition and the child's integration into a

---

[3] The father's parental rights were terminated under Iowa Code section 232.116(1)(b). He does not appeal.

preadoptive home." *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (cleaned up); *see also* Iowa Code § 232.116(2)(a), (b).

The mother contends that termination is not in D.W.'s best interest because she shares a strong emotional bond with the child. She highlights her consistent participation in twice-weekly supervised visits, her attendance at D.W.'s extracurricular activities, and service providers' comments about the affection she shows her son. The juvenile court did not doubt the mother's love for D.W. But it found she was otherwise unequipped to meet the child's long-term needs for safety and stability, citing her positive test results and ongoing denial of a drug problem. Clear and convincing evidence supports that determination. The mother's record of testing positive for methamphetamine—and her denials of use—undermine any assurance that she can provide D.W. with a safe and stable home. *See In re W.M.*, 957 N.W.2d 305, 314 (Iowa 2021) (finding termination was in the best interest of two children whose mother struggled to maintain sobriety from methamphetamine, noting "repeatedly bouncing in and out of Mom's chaotic life cannot be healthy").[4]

By contrast, D.W. enjoys a steady, nourishing environment in his preadoptive foster placement. *See* Iowa Code § 232.116(2)(b). At the time of the termination hearing, he had been living with his foster family for about ten months—his longest placement in nearly two years. The case manager testified that D.W. was receiving "the highest level" of physical, mental, and emotional care

---

[4] That said, we do not discount the mother's efforts to improve other areas of her life. At the start of the proceedings, she was sharing a residence with other drug users, in a domestically-violent relationship, and unemployed. By the termination hearing, the mother had ousted her co-habitants, ended her relationship, obtained part-time employment, and maintained stable housing.

in the placement and shared a "fantastic" relationship with his caregiver. The case manager also noted that D.W. shared a strong bond with his foster parent and a foster sibling, who was the same age as D.W.

The court "cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *W.M.*, 957 N.W.2d at 314 (citation omitted). Such are the circumstances here. The mother's love for D.W. is sadly eclipsed by the dangers of her unresolved drug problem and the child's need for long-term stability. *See id.*; *see also In re L.T.*, No. 24-1348, 2024 WL 4966040, at *5 (Iowa Ct. App. Dec. 4, 2024) (finding termination was in the best interest of a child who was integrated in a long-term foster placement, despite the mother's recent efforts to address her methamphetamine use). Termination is in D.W.'s best interest.

In a similar vein, the mother contends that the evidence of her strong bond with D.W. merits the permissive exception to termination under Iowa Code section 232.116(3)(c). *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting the exception is "permissive, not mandatory" (citation omitted)). That provision permits the juvenile court to avoid termination when clear and convincing evidence shows that it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

There's no dispute that D.W. and his mother share a strong emotional connection. In the words of the case manager, "you can see in interactions that they do care and love for each other very much." The mother testified that every time she arrived for a supervised visit, D.W. greeted her with a smile. But a close

bond between child and parent is not enough to avoid termination; the parent must also show that severing that bond would be detrimental to the child. *See A.B.*, 956 N.W.2d at 169 ("[T]he existence of a bond is not enough."). Aside from her testimony that D.W. "will have quite a bit of a hard time," the mother did not meet that burden. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception.").

Two years after Department intervention, the mother has failed to resolve— or even acknowledge—her methamphetamine problem. Meanwhile, D.W. is thriving in his preadoptive foster placement. He should not have to spend any more of his childhood waiting for a drug-free home. The juvenile court's order terminating the mother's parental rights is affirmed.

**AFFIRMED.**